IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

         Plaintiff,

         vs.                           Case No. 09-10099-07-JTM

Shawn Latrail Thomas,

         Defendant.

MEMORANDUM AND ORDER

The defendant, Shawn Latrail Thomas, has moved to dismiss the action against him, arguing that the government has violated his Sixth Amendment right to a speedy trial. For the reasons stated herein, the court denies the motion to dismiss.

*Factual Background*

Thomas was indicted on August 18, 2009, along with six co-defendants. The sealed Indictment (Dkt. 1) charged Thomas with distributing marijuana, money laundering, conspiracy as to both crimes, and interstate transportation in aid of racketeering. The Indictment remained sealed until on or about January 23, 2010, when the first defendants were arrested in Wichita, Kansas. The government proceeded by sealed indictment because it was using a cooperating witness and ongoing electronic surveillance.

The Drug Enforcement Administration and the United States Marshal's Service did not initially locate Thomas. Eric Smith, the DEA agent in charge of the case, testified that he knew that Thomas was probably not in Kansas, but instead lived in the Sacramento, California area. Consistent with established procedure which delegates authority for the apprehension of criminal defendants after the unsealing of an indictment, Smith entered information on the warrant for Thomas into NCIC, a nationwide computer database of active criminal warrants. Warrants entered into NCIC are confirmed each October to make sure the listed warrants remain valid. The warrant against Thomas remained as an active arrest warrant until on or about July 23, 2011. In addition, Smith testified that he contacted the DEA in Sacramento, indicating that Shawn Thomas was wanted on the Kansas warrant. Agent Smith testified that it is law enforcement policy not to contact family members in an attempt to track down fugitives, given the risk that contact will cause additional flight.

The government filed a First Superseding Indictment on July 28, 2010. (Dkt. 116). Charges against two of the defendants had by then been resolved. Thomas was charged only with one count of conspiracy to distribute marijuana.

The government filed a Motion for Writ of Habeas Corpus Ad Prosequendum for defendant Lawrence Ballard, then in custody in Oklahoma, which was granted on May 31, 2011.  Following his transfer to Kansas, Ballard was arraigned on June 24, 2011, and the court set the jury trial for August 30, 2011.

On August 1, Ballard filed a motion to continue the trial. The court granted this order on August 4, 2011, setting the jury trial for December 13, 2011, finding that all of the intervening time was excludable. (Doc. 327.)

Thomas was arrested in Elko, Nevada on July 23, 2011. He was transported to Kansas and initially appeared on August 19, 2011. (Dkt. 347). He was arraigned on August 29, 2011. (Dkt. 351).

Thomas filed his Motion to Dismiss on speedy trial grounds on September 29, 2011.

At the hearing on Thomas's motion,  Thomas testified that he was arrested in Elko as he prepared to appear at a hip-hop concert. The evidence shows that Thomas, appearing under the stage-name "C-Bo" has released some 40 different albums for the "West Coast Mafia" record label. The evidence at the hearing indicated that West Coast Mafia markets itself through the internet, and lists the name and contact information for C-Bo's manager.

On the cited websites, West Coast Mafia provides a post office box, but not street address. There is no evidence as to the level of sales for these records. Further, the evidence does not demonstrate any open or obvious connection between West Coast Mafia's "C-Bo," and the name of the defendant.

During the time prior to his arrest, Thomas periodically traveled to attend concerts. While traveling, he would live in hotels in each city for a couple of days. He would register in his own name when he arrived. Before his arrival, the room was booked in the name of the concert promoter. When he was not on tour, Thomas lived in Sacramento, California, in an apartment rented by his mother. His name is not on the lease. He has never owned any real estate or cars in his own name.

### *Sixth Amendment Speedy Trial*

When the defendant claims his Sixth Amendment right to a speedy trial has been violated, the court must assess the claim in light of (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay actually prejudiced the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530.

"Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992). If a presumptively prejudicial delay exists, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652 (citing *Barker*, 407 U.S. at 533-34).

The government argues that the court should measure the delay only from the date that the "criminal prosecution formally began," that is, either the date of his arrest in Nevada (July 23, 2011), or his arraignment in Kansas (August 29, 2011). (Dkt. 366, at 6). Since less that a year elapsed between the date of the formal prosecution and the scheduled trial, the government argues, the delay is not presumptively prejudicial, and the court need not weigh the *Barker* factors to determine the existence of a Sixth Amendment violation.

The court finds that the delay was presumptively prejudicial, as the time of the delay does not await the arrest or arraignment. "[I]t is either a formal indictment or information or else the

4

actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular

protections of the speedy trial provision of the Sixth Amendment.*" United States v. Marion*, 404

U.S. 307, 320, (1971). Thus, for Sixth Amendment speedy trial purposes, "[t]he length of delay is

measured from ... the earlier of either arrest or indictment." *United States v. Batie*, 433 F.3d 1287,

1290 (10th Cir.), *cert. denied*, __U.S.__, 126 S.Ct. 2949, 165 L.Ed.2d 957 (2006). *See also, e.g.,*

*United States v. Hernandez*, 2009 WL 3856201 (D.Kan. Nov. 17, 2009) (noting "[t]he general rule

is that the speedy trial right attaches when the defendant is arrested or indicted, whichever occurs

first."[1]

Accordingly, the delay of 22 months from the original Indictment is presumptively

prejudicial, and the court must address whether Thomas's Sixth Amendment rights were violated,

using the factors set forth in *Barker.*


### *Length of Delay*

As noted earlier, the delay of approximately 22 months is substantial, and sufficient to trigger

the presumptive prejudice analysis authorized by the Supreme Court. At the same time, however,

delay by itself is insufficient to establish a Sixth Amendment speedy trial violation. Further, as noted

---

[1]Notably, in *Doggett*, the Court measured the "extraordinary 8/12 year lag [which] clearly suffices to trigger the speedy trial inquiry" from the time of the defendant's indictment, not his eventual apprehension. 505 U.S. at 652.

In contrast, as the government correctly notes, the time period for a statutory speedy trial claim under 18 U.S.C. § 3161(c)(1) is measured from "the filing date (and making public) of the ... indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

below, courts have sustained delays of comparative length where other factors failed to support a finding of a violation.

### *Reason for the Delay*

The government argues in its Response that, following the Indictment, information as to the arrest warrant was "entered into NCIC and available to all law enforcement officers to see and execute if the defendant was arrested." (Dkt. 366, at 7). It further "would advise the court that the Drug Enforcement Administration and the United States Marshal's Service took appropriate steps in an attempt to find and arrest the defendant." In opposition, Thomas argued at the hearing on his motion that the government's investigation cannot be deemed reasonable, because it was "passive" rather than "active" in nature.

The government bears the burden of showing that it was free from culpability in the delay *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir.2004). The court assesses the responsibility for the delay based on the level of government culpability. If the delay is a "deliberate attempt" to delay a trial for tactical reasons, this will weigh "heavily" in favor of a Sixth Amendment violation; negligence by the government is more "neutral" and weighs "less heavily," and the government must show a "valid reason" to "justify [an] appropriate delay." *Barker*, 407 U.S. at 531 & n. 32. *See also United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006) (recognizing that delay due to "[n]egligence and crowded court dockets ... weigh less heavily against the government"). Further, the nature of the delay is considered in combination with its extent. *See Doggett*, 505 U.S. at 657 (government culpability "compounds over time," since "our toleration of such negligence varies inversely with its protractedness.")

As the Tenth Circuit has observed, "[a]lthough the government must make some effort to locate a fugitive defendant and bring him to trial, the effort need only be reasonable, not heroic." *United States v. Anderson*, No. 98-1256, 1999 WL 393658, *3 (10th Cir. 199) (citing *United States v. Sandoval*, 990 F.2d 481, 484-85 (9th Cir.1993)). In determining whether the government is responsible for pretrial delay due to its failure to effect an earlier arrest of the defendant, "we must remember that hindsight is better than contemporaneous or foresight and Monday morning quarterbacking is a favorite sport of armchair strategists and litigating lawyers." *United States v. Agreda*, 612 F.Supp. 153, 158 (E.D.N.Y. 1985).

Further, even if the government displays some negligence in effecting a arrest, this by itself will not establish a Sixth Amendment violation.  *See United States v. Cone*, 310 F3d. Appx. 212, 219, 222 (10th Cir. 2008) (no violation for delay of 18 months, where government's "acts were negligent, not malevolent," and where defendant complained only of added anxiety and additional detention in more restrictive detention, but otherwise "ma[d]e no claim to an impairment of his ability to defend against these charges).

In seeking apprehension of a defendant not in custody, the government acts reasonably by supplying the defendant's identity to nationwide criminal databases. *See United States v. Ocampo*, 266 F.3d Appx. 63, 65 (2nd Cir. 2008) (holding that the government "acted diligently and in good faith" with respect to defendant outside United States when it " entered information about Ocampo, his 1982 criminal conviction, and his 1994 indictment in various databases to ensure his arrest if he traveled to the United States"); *United States v. Walker*, 92 F.3d 714 (8th Cir. 1996) (finding government acted reasonably by entering fugitive defendant's name in NCIC computer system, and performing periodic checks to determine if he had been apprehended).

Further, the evidence shows that the defendant has engaged in the use of aliases. "[W]hether or not [a] defendant was intentionally evading authorities, his lifestyle [may make] it difficult for authorities to track him down." *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994). Thus, for reasons of evaluating a Sixth Amendment claim, "some blame" may properly be attributed to the defendant whose use of multiple identities delays his apprehension. *United States v. Love*, No. 96-6224, 1997 WL 6133831, \*3 (6th Cir. 1997). *See generally United States v. James*, 183 Fed.Appx. 923 (11th Cir. 2006) (discussing both the use of aliases and updating of NCIC).

The court finds that this factor weighs in favor of the government, as the evidence shows that the government used reasonable efforts to locate and apprehend the defendant. The evidence contains no suggestion that the government delayed arresting Thomas to intentionally secure a tactical advantage at trial. Further, the evidence fails to show that the government ignored or overlooked any clear evidence as to Thomas' location. In contrast, the evidence in *Doggett* showed that the government "could have found [the defendant} within minutes." 505 U.S. at 653.

The defendant's argument that government might have located him sooner reflects precisely the sort of hindsight that courts are cautioned to avoid. His argument, that the government was negligent in not tracking him down sooner,  is similar to that advanced in *United States v. Mayers*, No. 3:05-CR-38-FDW, 2008 WL 64683, (W.D.N.C. Jan. 2, 2008).

> Mayers' position seems to be that because he was living "open and notoriously" in South Carolina and was not purposefully evading apprehension, this factor should weigh against the Government for its failure to track him down and arrest him sooner. Under *Barker v. Wingo*, however, the question is not simply which party is more responsible for the delay but also whether the reason for the delay is inherently valid as opposed to owing to some negligent conduct or deliberate gamesmanship. *Id*. at 531. As noted above, the reason for much of the delay in this case is a valid one:   Mayers was a fugitive living at large in another jurisdiction, and the Government cannot bring to trial a defendant whose whereabouts are unknown to it. The Government at most might be expected to exercise "due diligence" bringing a

fugitive to justice, but certainly need not make "heroic efforts" to do so. *United States v. Sandoval*, 990 F.2d 481, 484-85 (9th Cir. 1993). And here, the credible testimony of BATF Special Agent Sherry Hamlin establishes that all ordinary and reasonable efforts were made to apprehend this defendant: an arrest warrant was issued and entered into the National Crime Information Center (NCIC) database; Agent Hamlin personally contacted local police authorities to inform them about the warrant; law enforcement authorities attempted to find him at his last known address(es) and contacted family members and associates in the area to determine his whereabouts; and ultimately ATF sought the assistance of the U.S. Marshal's fugitive unit to locate and apprehend Mayers.

2008 WL 64683. The government here did not attempt to directly contact Thomas' family members. However, Agent Smith credibly testified that this was a reasonable action, as attempting to locate fugitives through contact with family members can simply result in the fugitive being tipped off. More importantly, the defendant did not live "openly and notoriously" in California. Rather, his residence and lifestyle tended to obscure rather than reveal his location. Considering all of the evidence in the case, the court finds that the government has presented a valid reason for the delay in arresting the defendant.

### *Assertion of the Speedy Trial Right*

The government argues that this element should weigh against Thomas, based upon his delay in advancing his speedy trial claim. The assertion of speedy trial rights is important because it has "strong evidentiary weight" in showing actual deprivation of the right to a speedy trial. *Barker*, 407 U.S. at 531-32. "A defendant should assert his right to a speedy trial when possible to protect that right." *United States v. Smith*, 997 F.2d 881 (5th Cir. 1993). However, this element will be deemed neutral where a defendant had no knowledge of an indictment, and "assert[s] the right soon after he knew that he was being prosecuted, adequately protecting it." *Id. See United States v. Cone*, 310

F3d. Appx. 212, 218 (10th Cir. 2008) (finding factor supported defendant who "promptly and repeatedly" asserted his speedy trial rights).

Here, this element is neutral. There is no evidence that Thomas was aware of the charges against him until after he was arrested. Thomas did delay advancing his speedy trial argument for a month, but this does not appear to be a substantial delay in comparison to the delay otherwise present in the case.

### *Prejudice*

For Sixth Amendment purposes, prejudice is viewed in the light of the interests underlying the right — "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* While no one of the *Barker* factors is decisive, the Tenth Circuit has stated that courts should be "reluctan[t] to find a speedy trial deprivation where there is no prejudice." *Jackson v. Ray*, 390 F.3d 1254, 1267 (quoting *United States v. Brown*, 600 F.2d 248, 254 (10th Cir.1979)) (internal quotation marks omitted).

In extreme cases, the defendant may establish a Sixth Amendment violation even in the absence of any prejudice. In *Doggett,* the Court relieved the defendant of any need to show actual prejudice, given the cause and extent of the delay. Specifically, the court stressed the findings of the lower courts that the delay in arresting the *Doggett* was the product of government negligence, and that the delay was "six times as long as that generally sufficient to trigger judicial review." 505 U.S.

at 658. However, courts have been reluctant to extend *Doggett* beyond its facts, which included both a relatively high degree of government negligence, and nearly a decade of delay.

Courts have rejected Sixth Amendment claims based on comparable delays in the absence of a showing of actual prejudice or active malfeasance by the government. In *United States v. Cone*, 310 Fed.Appx. 212 (10th Cir. 2008), the court rejected the defendant's speedy trial claim based upon an 18-month delay, even though the evidence showed that the delay was "mostly attributable" to government negligence, and defendant made "persistent and sincere" efforts to assert his speedy trial rights, where the defendant suffered no additional incarceration (being already incarcerated on separate charges) and "the prejudice to Cone's defense was nil." 310 Fed. Appx. at 222. *See also United States v. Maxwell*, 351 F.3d 35 (1st Cir. 2003) (no violation by delay of fifteen months, where the delay was caused by neutral factors, the defendant waited eight months before asserting the right, and no showing of any damage to defense); *United States v. Hall*, 551 F.3d 257 (4th Cir. 2009) (right not violated by two year delay, although defendants promptly asserted their speedy trial rights at their initial appearance, where reasons for delay were neutral, and there was no evidence that the defense was impaired).

This factor weights in favor of the government. Thomas was not in custody until his arrest the month preceding his arraignment, and his trial has been scheduled within six months of his arrest. Accordingly, he has not suffered from oppressive pretrial incarceration during the 22-month delay. Similarly, Thomas professes ignorance of the charges in the Indictment, and thus was not subject to prolonged anxiety and concern over the delay in trial during that 22 months. Accordingly, the only potential prejudice to Thomas from the delay is the impact on his ability to present a defense.

Since the case does not exemplify the extreme and unjustified delay of the type demonstrated in *Doggett*, the burden is on the defendant to show the existence of prejudice. *Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004). But the defendant in his motion makes no attempt to show the existence of any actual prejudice to his defense at trial. The present prosecution arises from wiretaps (allegedly) showing the existence of an ongoing drug conspiracy between Thomas and co-defendant Adrian Patterson. All of the evidence which might have been adduced, had Thomas been tried along with Patterson in 2010, is still available. In fact, Thomas now may have more evidence available to him, as he may be able to call (the now convicted) Patterson as a witness at the upcoming trial, and has been also given him the practical opportunity to preview the government's case against him.

Considering all of the Barker factors, the court concludes that the delay in prosecuting the defendant has not resulted in a violation of his rights under the Sixth Amendment, and his motion to dismiss is DENIED.

IT IS SO ORDERED this 27th day of October, 2011.


J. Thomas Marten
J. THOMAS MARTEN, JUDGE